1                       UNITED STATES DISTRICT COURT
               FOR THE MIDDLE DISTRICT OF TENNESSEE
2                          NASHVILLE DIVISION

3   _____

4   UNITED STATES OF AMERICA      )
                              )
5                            )
   vs.                     )  CASE NO. 3:09-00186
6                            )
                            )
7   RENSO NORIEGA             )

8   _____

9

                   TRANSCRIPT OF PROCEEDINGS
10                       PLEA HEARING

11   _____

12   BEFORE:               THE HONORABLE ALETA A. TRAUGER

13   DATE:                 SEPTEMBER 2, 2010

14   TIME:                 2:00 P.M.

15   _____

16   APPEARANCES:

17   FOR THE GOVERNMENT:    BRENT HANNAFAN
                           U.S. Attorney's Office
18                         Nashville, Tennessee

19   FOR THE DEFENDANT:     PATRICK FROGGE
                           Nashville, Tennessee
20   _____

21
   REPORTED BY:          BEVERLY E. "BECKY" COLE, RPR
22                         OFFICIAL COURT REPORTER
                         A-837 U.S. COURTHOUSE
23                         NASHVILLE, TN  37203
                         (615) 726-4893
24                         BECKY_COLE@TNMD.USCOURTS.GOV

25

1          THE COURT:  Good afternoon.  We're here on United

2    States vs. Renso Noriega.  We have Brent Hannafan for the

3    government and Patrick Frogge for the defendant.  The

4    defendant is in the courtroom.

5       We're here on a petition to enter a plea of guilty,

6    correct --

7          MR. FROGGE:  Yes, Your Honor.

8          THE COURT:  -- without a plea agreement.

9          MR. FROGGE:  That's correct.

10         THE COURT:  Okay.  Would you bring your client

11   around, please?

12         MR. FROGGE:  And, Your Honor, you may recall, we

13   did this once before.

14         THE COURT:  I do recall.  Were you his counsel at

15   that point?

16         MR. FROGGE:  I was, and I trust the Court has the

17   petition from that.

18         THE COURT:  I have the petition.

19         MR. FROGGE:  Okay.

20         THE COURT:  I do.  Okay.  Mr. Noriega, would you

21   raise your hand to be sworn, please.

22         (WITNESS WAS SWORN.)

23         THE CLERK:  Would you state your name for the

24   record, please?

25         MR. NORIEGA:  My name is Renso Noriega.

1          THE COURT:  Mr. Noriega, how old are you?

2          MR. NORIEGA:  I am 28.

3          THE COURT:  How far did you go in school?

4          MR. NORIEGA:  I finished high school and went to

5    some college.

6          THE COURT:  Okay.  Where was that?

7          MR. NORIEGA:  I went to -- part, about a year to

8    year and half to MTSU, and then I had to move to Nashville

9    Tech, economically.

10         THE COURT:  Okay.  All right.  Everything you say

11   in court today is under oath and could be used against you

12   in a prosecution for committing perjury or making a false

13   statement.

14       Do you understand that?

15         MR. NORIEGA:  Correct, yes, ma'am.

16         THE COURT:  Mr. Noriega, you are charge in a

17   third superseding indictment returned by the grand jury in

18   this district on March 31st of this year with the following

19   offense.

20       That between about October of 2008 through August 14

21   of 2009 in the Middle District of Tennessee, you and several

22   other individuals conspired to unlawfully, knowingly and

23   intentionally possess with intent to distribute and to

24   distribute five kilograms or more of a mixture and substance

25   containing a detectable amount of cocaine, a Scheduled II

1  controlled substance in violation of federal law.

2      Do you feel you understand this charge against you?

3          MR. NORIEGA:  Yes, Your Honor.

4          THE COURT:  Have you told Mr. Frogge everything

5  you know about the facts that support this charge?

6          MR. NORIEGA:  Yes, Your Honor.

7          THE COURT:  Has he told you what the government

8  would have to prove for you to be found guilty of this

9  charge.

10         MR. NORIEGA:  Yes, Your Honor.

11         THE COURT:  Has he discussed with you any

12 possible defenses you might have?

13         MR. NORIEGA:  Yes, Your Honor.

14         THE COURT:  Has he done all the investigation you

15 have asked him to do?

16         MR. NORIEGA:  Yes.

17         THE COURT:  Are you satisfied with his

18 representation of you so far?

19         MR. NORIEGA:  Yes, Your Honor.

20         THE COURT:  We have a minimum mandatory ten

21 years.  Is that right, Mr. Hannafan?

22         MR. HANNAFAN:  Yes, Your Honor.

23         THE COURT:  All right.  The possible penalty here

24 is a minimum of ten years and on up to life, a supervised

25 release term of at least five years, a fine of up to $4

1   million, and a special assessment of $100.

2      I want to tell you a little bit more about those

3   penalties.

4      We do not have any parole in the federal system.  We

5   have a system of good time credits that you might or might

6   not earn up to 54 days per year.

7      However many days you earn would be credited against

8   your jail time at the end of each year and would shorten

9   your jail time by that much.

10      Any period of prison time is followed by a period of

11   supervised release.  You would be reporting to a probation

12   officer and having to comply with certain conditions.

13      If you violated any of those conditions, your

14   supervised release could be revoked and you could be made to

15   serve additional time in prison.

16      This offense carries with it a substantial fine.  I

17   must levy a fine against you unless I find you are

18   financially unable to pay a fine.  The $100 special

19   assessment must be paid no matter what your ability is to

20   pay it.

21      This is a felony you are offering to plead guilty to.

22   Conviction of a felony deprives you of the right to vote,

23   right to possess a firearm, and this conviction may be

24   counted as one of the necessary prior convictions in a

25   prosecution for being a habitual criminal.

1          Do you understand all that?

2                MR. NORIEGA:  Yes, Your Honor.

3                THE COURT:  Are you presently on probation or

4     parole from any other offense?

5                MR. NORIEGA:  No, just this.

6                THE COURT:  Just this one?

7                MR. NORIEGA:  Uh-huh.

8                THE COURT:  I want to explain to you the

9     important constitutional rights that you're giving up by

10    pleading guilty.

11         You have the right to go to trial with the assistance

12    of your lawyer who would confront and cross-examine the

13    witnesses on your behalf.

14         You could not be made to take the stand, testify,

15    incriminate yourself, call a witness or put on any kind of a

16    case at all.

17         It would be the government's sole burden to prove each

18    and every element of this offense beyond a reasonable doubt

19    to the satisfaction of a jury of 12 people.  Their verdict

20    would have to be unanimous.

21         Do you understand that by pleading guilty you are

22    giving up all of those important constitutional rights?

23                MR. NORIEGA:  Yes, Your Honor.

24                THE COURT:  And do you understand there will be

25    no further trial of any sort, there will just be a

1    sentencing hearing in front of me?

2              MR. NORIEGA:  Yes, Your Honor.

3              THE COURT:  You are proposing to plead guilty

4    without a plea agreement with the government.  Have you read

5    the petition to enter a plea of guilty?

6              MR. NORIEGA:  Yes, Your Honor.

7              THE COURT:  Do you feel you understand it?

8              MR. NORIEGA:  Yes, Your Honor.

9              THE COURT:  Has anybody promised you or suggested

10   to you what sentence I will give you in order to get you to

11   plead guilty?

12             MR. NORIEGA:  No.

13             THE COURT:  No?

14             MR. NORIEGA:  (Moves head from side to side.)

15             THE COURT:  Has anyone put any kind of pressure

16   on you, psychological or physical, to get you to plead

17   guilty?

18             MR. NORIEGA:  No, Your Honor.

19             THE COURT:  Have you had any alcohol in the last

20   12 hours?

21             MR. NORIEGA:  No.  No, Your Honor.

22             THE COURT:  Have you had any narcotics,

23   hallucinogens or medicines containing narcotics in the last

24   12 hours?

25             MR. NORIEGA:  No, Your Honor.

```
 1              THE COURT:  Are you on any kind of medication
 2    today?
 3              MR. NORIEGA:  No.
 4              THE COURT:  Is your mind clear and you feel like
 5    you know what you're doing?
 6              MR. NORIEGA:  Yes.
 7              THE COURT:  All right.  I'm going to ask all
 8    parties to execute the petition at this time and pass it
 9    forward.
10              (Pause.)
11              THE COURT:  All right.  If you will step back,
12    Mr. Hannafan, I'll hear the facts.
13              MR. HANNAFAN:  Yes, Your Honor.
14              THE COURT:  Mr. Frogge, do you have any objection
15    to Mr. Hannafan giving the facts in this case?
16              MR. FROGGE:  I don't, Your Honor, but I will
17    point out for all concerned that this is where we sort of
18    got hung up last time.
19          And Mr. Noriega, we have gone through this, and I
20    spoke with Mr. Hannafan, I think there are some facts that
21    Mr. Noriega disagrees with that Mr. Hannafan is about to
22    read, but he is pleading guilty to the count in the
23    indictment.
24          So I'll say that for my client's benefit and for Mr.
25    Hannafan's benefit.
```

1          THE COURT:  All right.

2          (WITNESS WAS SWORN.)

3          THE COURT:  Go ahead.

4          MR. HANNAFAN:  Thank you, Your Honor.  Beginning

5   not later than in or about October 2008, the exact date

6   being unknown through on or about August 14, 2009, in the

7   Middle District of Tennessee and elsewhere, the defendant

8   did combine, conspire, confederate and agree with others to

9   unlawfully knowingly intentionally possess with intent to

10  distribute and to distribute five kilograms or more of a

11  mixture and substance containing a detectable amount of

12  cocaine, a Schedule II controlled substance, in violation of

13  Title 21 United States Code Section 841(a)(1) all in

14  violation of Title 21 United States Code Section 846.

15          Prior to October of 2008 calls over a telephone used

16  by Co-defendant Martin Martinez, also known as Juve, were

17  intercepted by the drug enforcement administration pursuant

18  to a Title III court authorized wiretap out of the Northern

19  District of Georgia.

20          Juve was intercepted over that telephone discussing

21  the procurement and distribution of cocaine with

22  Co-defendant Mauricio Orozco Rios, also known as Guicho.

23          Based upon those interceptions, the DEA obtained a

24  Title III court authorized wiretap over a telephone Guicho

25  was using in the Middle District of Tennessee in October

1  2008.

2      Between October 2008 and August 14 of 2009, the DEA in

3  Nashville obtained a total of five additional Title III

4  court authorized wiretaps over the telephones of Guicho and

5  two other co-conspirators who are co-defendants in this

6  case, Francisco Jorge Sepulveda, also known as George; and

7  Armando Jaimes-Salazar, also known as Roberto

8  Jaimes-Salazar, also known as Sueno.

9      Several co-defendants with whom the defendant

10  conspired to distribute cocaine were intercepted having

11  conversations over those wiretaps.

12      During those conversations, the co-defendants

13  discussed the possession and distribution of kilograms of

14  cocaine in the Middle District of Tennessee and elsewhere.

15      The defendant was intercepted on wiretaps over

16  Guicho's phones.  The content of those intercepted calls

17  indicated that the defendant worked as a courier for Guicho

18  to transport cocaine and money from the sale of cocaine in

19  the Middle District of Tennessee.

20      On June 24, 2009, Nashville DEA agents followed the

21  defendant and Juve to Atlanta where Atlanta DEA agents

22  observed them drop off the Toyota to several unknown

23  Hispanic males in a mall parking lot.

24      Those men then took the vehicle to what was believed

25  to be a stash house.

1    The defendant and Juve later met up with Hispanic men

2  and drove the Toyota back to Nashville.

3    Surveillance agents then observed the defendant part

4  that Toyota in Guicho's garage.

5    On or about August 14, 2009, Co-defendant Marcos

6  Arriaza Rios traveled to Atlanta and met with Juve.

7    The two of them then traveled to Nashville from

8  Atlanta in the same Toyota on which the DEA had previously

9  performed surveillance during the course of its

10  investigation.

11    On the morning of August 14, 2009, Marcos and Juve

12  arrived in that Toyota at the residence of Co-defendants

13  George Sepulveda and Hugo Sepulveda.  That residence is

14  located in the Middle District of Tennessee.

15    Juve signed a Spanish written consent form provided to

16  him by the DEA and gave his consent to the DEA to search

17  that Toyota.

18    Additionally, a drug detection canine indicated the

19  presence of controlled substance in the vehicle.

20    Upon searching the vehicle, the DEA located nine

21  kilograms of cocaine in a hidden compartment underneath the

22  front seats of that Toyota.

23         THE COURT:  Okay.  Any questions for Mr.

24  Hannafan?

25         MR. FROGGE:  No.

1           THE COURT:  All right.  Thank you, Mr. Hannafan.

2           MR. HANNAFAN:  Thank you, Your Honor.

3           THE COURT:  Would you bring your client around

4    again, please?

5        Mr. Noriega, you heard Mr. Hannafan give the facts

6    that support this charge.

7        Without asking you to admit all the facts that he gave

8    me, let me tell you for you to be found guilty of this

9    charge, the government has to prove these elements beyond a

10   reasonable doubt.

11       That you conspired or agreed with others to

12   unlawfully, knowingly and intentionally possess with the

13   intent to distribute or to distribute five kilograms or more

14   of a mixture or substance containing a detectable amount of

15   cocaine.

16       Do you think the government could prove those elements

17   of this offense if you went to trial?

18           MR. NORIEGA:  Yes, Your Honor.

19           THE COURT:  So you are pleading guilty because

20   you are, in fact, guilty?

21           MR. NORIEGA:  Yes, Your Honor.

22           THE COURT:  The Court finds there's a factual

23   basis for the plea in this case.

24       The Court has observed the appearance of Mr. Noriega

25   and his responsiveness to the questions asked.  Based upon

1  that observation and the answers to the questions, the Court

2  is satisfied that Mr. Noriega is in full possession of his

3  faculties and competent to plead guilty.

4      He's not under the apparent influence of narcotics,

5  hallucinogens or alcohol.

6      He understands the nature of the charge to which his

7  plea is offered and the maximum possible penalty and minimum

8  mandatory penalty provided by law.

9      He's waiving his constitutional rights to trial and

10 the constitutional rights accorded all persons accused of a

11 crime.

12     He has offered to plead guilty voluntarily.  I'll

13 reserve acceptance of the plea until I see the presentence

14 report.

15     Can we set the sentencing for Monday, November 22nd?

16 That's the Monday before Thanksgiving.

17          MR. HANNAFAN:  That's fine with me, Your Honor.

18          MR. FROGGE:  Yes, Your Honor.

19          THE COURT:  All right.  Let's set it at 1:30.

20 Are we anticipating a lot of testimony at this hearing in

21 terms of the amount of cocaine he's going to be responsible

22 for or anything of that nature?

23          MR. FROGGE:  Your Honor, I think there is a

24 co-defendant that's set for trial in October, and I think

25 actually -- the government probably anticipates actually

1    will be tried in October, and I think we'll know a lot more

2    about that then.

3                THE COURT:  Okay.  Okay.

4                MR. FROGGE:  But I do anticipate -- as you can

5    see, Mr. Noriega's family always comes to court, and I

6    anticipate a lot of them would like to speak at a sentencing

7    hearing.

8                THE COURT:  Okay.  Well, why don't we set this

9    then at 2:30?  Okay.

10               MR. FROGGE:  2:30 on the 22nd?

11               THE COURT:  2:30 on Monday the 22nd of November.

12               MR. FROGGE:  Thank you, Your Honor.

13               THE COURT:  How many defendants are you

14   anticipating at this point?  I have three for trial.

15               MR. HANNAFAN:  Two, Your Honor.

16               THE COURT:  Two.  Who's -- you want to say out

17   loud who the third one is that's not going to trial or not?

18   I maybe should have -- well, it's this defendant.  Yeah.

19               MR. HANNAFAN:  Okay.

20               THE COURT:  I have Mr. Noriega down for trial.

21               MR. HANNAFAN:  Okay.

22               THE COURT:  So I'll take him off.

23               MR. HANNAFAN:  It's Mr. Ariano and Mr. Mauricio

24   Orozco-Rios, the lead defendant.  Those are the only two I

25   anticipate going to trial.

```
 1                  THE COURT:  Okay.  Very good.  Now, Mr. Noriega
 2      is on bond?
 3                  MR. HANNAFAN:  Yes.
 4                  MR. FROGGE:  Yes.
 5                  THE COURT:  Is there any objection to leaving him
 6      on bond?
 7                  MR. HANNAFAN:  No.
 8                  THE COURT:  All right.  Mr. Noriega, it's very
 9      important -- apparently you have complied with the
10      conditions of your release.  It's very important you
11      continue to do so.
12                  MR. NORIEGA:  Yes.
13                  THE COURT:  Okay?
14                  MR. NORIEGA:  Okay.
15                  THE COURT:  Anything else on this case?
16                  MR. HANNAFAN:  No, Your Honor.
17                  THE COURT:  Very good.  We're in recess.
18                  MR. HANNAFAN:  Thank you, Your Honor.
19                  MR. FROGGE:  Thank you, Your Honor.
20
21
22
23
24
25
```

1                    REPORTER'S CERTIFICATE

2

3          I, BEVERLY E. "BECKY" COLE, Official Court

4    Reporter for the United States District Court for the Middle

5    District of Tennessee, with offices at Nashville, do hereby

6    certify:

7          That I reported on the stenotype shorthand machine

8    the proceedings held in open court on September 2, 2010 in

9    the matter of UNITED STATES OF AMERICA vs. RENSO NORIEGA,

10   Case No. 3:09-00186;

11         That a transcript of proceedings in connection

12   with the hearing was reduced to typewritten form by me;

13         That the foregoing transcript is a true and

14   accurate record of the proceedings to the best of my skills

15   and abilities;

16         This the 30th day of October, 2012.

17

18

19

20                       /s/
                 BEVERLY E. COLE, RPR
21

22

23

24

25